IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEANDRO DEMAND JOHNSON,

    Petitioner,                      No. CIV S-10-0722 MCE GGH P

    vs.

GARY SWARTHOUT,

    Respondent.                FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first degree murder and of robbery on his plea of guilty and sentenced to 27 years to life (a 25-year-to-life term with a two-year weapon enhancement) in Alameda County Superior Court in 1988. Petition, pp. 1-2, 265-266; Answer, docket # 12-1 (RT[1] re: sentence proceedings), pp. 102-103. Petitioner herein challenges the 2009 decision by the California Board of Parole Hearings (BPH) finding him unsuitable for parole. Petition, pp. 19. Petitioner challenges the five-year denial at a subsequent parole consideration hearing as a denial of due process on two grounds: 1) the record contains no

---

[1] Reporter's Transcript.

evidence that petitioner is a current danger to the public; and 2) the state is not complying with the terms of his plea agreement. See Petition, pp. 5-42, 223, 259-262, 264-267.

II. Discussion

        A. *Alleged Due Process Violation - No Evidence in Record that Petitioner is a Current Danger to the Public*

As to the petitioner's first ground challenging the parole denial, by Order, filed on February 3, 2011, the parties were directed to provide simultaneous supplemental briefing, in light of Swarthout v. Cooke, ___ U.S. ___, 131 S. Ct. 859, 861 (2011),[2] why this claim should not be dismissed. The parties submitted the additional briefing timely.

The United States Supreme Court in a per curiam decision found that the Ninth Circuit erred in commanding a federal review of the state's application of state law in applying the "some evidence" standard in the parole eligibility habeas context. Swarthout v. Cooke, ___ U.S. ___, 131 S. Ct. 859, 861 (2011). Quoting, inter alia, Estelle v. McGuire, 502 U.S. 62, 67 (1991), the Supreme Court re-affirmed that "'federal habeas corpus relief does not lie for errors of state law.'" Id. While the high court found that the Ninth Circuit's holding that California law does create a liberty interest in parole was "a reasonable application of our cases" (while explicitly not reviewing that holding),[3] the Supreme Court stated:

        When, however, a State creates a liberty interest, the Due Process

---

[2] The citation in the order was to Swarthout v. Cooke [___] U.S. ___, ___ S. Ct. ___, 2011 WL 197627 *2 (Jan. 24, 2011).

[3] While not specifically overruling Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), the Supreme Court instead referenced Pearson v. Muntz, 606 F.3d 606 (9th Cir. 2010), which further explained Hayward. Thus, the Supreme Court's decision in Swarthout, essentially overruled the general premise of Hayward. When circuit authority is overruled by the Supreme Court, a district court is no longer bound by that authority, and need not wait until the authority is also expressly overruled. See Miller v. Gammie, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc). Furthermore, "circuit precedent, authoritative at the time it was issued, can be effectively overruled by subsequent Supreme Court decisions that 'are closely on point,' even though those decisions do not expressly overrule the prior circuit precedent." Miller, 335 F.3d at 899 (quoting Galbraith v. County of Santa Clara, 307 F.3d 1119, 1123 (9th Cir. 2002)). Therefore, this court is not bound by Hayward.

>Clause requires fair procedures for its vindication-and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal.

Swarthout v. Cooke, at 862.

Citing Greenholtz,[4] the Supreme Court noted it had found under another state's similar parole statute that a prisoner had "received adequate process" when "allowed an opportunity to be heard" and "provided a statement of the reasons why parole was denied." Swarthout v. Cooke, at 862. Noting their holding therein that "[t]he Constitution [] does not require more," the justices in the instances before them, found the prisoners had "received at least this amount of process: They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied." Id.

The Supreme Court was emphatic in asserting "[t]hat should have been the beginning and the end of the federal habeas courts' inquiry...." Swarthout v. Cooke, at 862. "It will not do to pronounce California's 'some evidence' rule to be 'a component' of the liberty interest...." Id., at 863. "No opinion of ours supports converting California's "some evidence" rule into a substantive federal requirement." Id., at 862. Thus, it appears there is no federal due process requirement for a "some evidence" review and it also appears that federal courts are precluded from review of the state court's application of its "some evidence" standard.[5] A review of the transcript of petitioner's March 3, 2009, subsequent parole suitability hearing,

---

[4] Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 16 (1979).

[5] The court notes some perversity in the result here. Loss of good-time credits, even for a day, pursuant to decision at a prison disciplinary hearing, must be supported by "some evidence." Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985). Assignment to administrative segregation requires the same "some evidence" before such an assignment can be justified. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.2003). However, a denial of parole eligibility after sometimes decades in prison, and where another opportunity for parole can be delayed for as long as fifteen more years, requires no such protection from the federal due process standpoint. Nevertheless, such is the state of the law.

demonstrates that petitioner had an opportunity to be heard and was provided with a statement of reasons for the parole denial. Petition, Exhibit (Ech.) B, BPH 3/03/09 hearing transcript, pp. 57-158[6]; Answer, Ech. 1, Docket # 11-2, BPH transcript. 45-139, Docket # 11-3, pp. 1-8, see also Ech. 3. Petitioner appears to concede that the Supreme Court's ruling in Swarthout spells the end of any claim based on "some evidence" in federal court if a petitioner is afforded an opportunity to be heard and reasons for the parole denial and he does not contend that he was denied either. See petitioner's Supplemental Briefing (docket # 16), p. 2. Therefore, the petition on this ground should be denied.

      B. *Alleged Due Process Violation - State Not in Compliance with Plea Agreement*

As to petitioner's ground two, petitioner divides this claim into three subpart. Petition, pp. 7, 31-41.

      1) <u>State misled petitioner into believing that the California Department of Corrections Would Issue/Set a Parole Date as a Result of the Plea Agreement</u>

Petitioner argues that in order to determine whether a plea bargain has been breached, a court must look to what the party reasonably understood the terms of the agreement to be when he pled guilty. Petition, p. 32, citing United States v. Anderson, 970 F.2d 602, 607 (9th Cir. 1992) as amended 990 F.2d 1163 (9th Cir. 1993); United States v. Packwood, 848 F.2d 1009, 1011 (9th Cir. 1988). Petitioner points to an exchange between himself and the trial court during the plea proceedings wherein the following exchange occurred:

> The Court: All right. Now my question is: has anyone made you any promises in connection with pleading guilty to these charges today that I haven't heard about right here in open court this afternoon on the record?
>
> The Witness : That I would have a release date?
>
> The Court: Well, you will, indeed. That is an automatic with the

---

[6] The court's electronic pagination is referenced.

1         Department of Corrections. They will set that date.

2 Petition, p. 32, Ech. G, Transcript of Guilty Plea, pp. 230-231;[7] Answer, Ech. 1c, Docket # 11-4,

3 pp. 8-9, also, Ech. 3. Petitioner contends that he was 18 years old when he entered the plea and

4 he believed that the CD-R (CDCR) would automatically set a release date. Petition, p. 33;

5 Traverse, pp. 9, 11; petitioner's supplemental briefing (docket # 16), p. 3.

6         On this claim the state court reasoned as follows:

> Petitioner also contends that the Board's denial violated his plea agreement. In support, Petitioner alleges that the state misled him to believe that the Department of Corrections and Rehabilitation ("CD-R") would issue a parole date as a result of the plea agreement. A habeas petitioner may not abuse the writ by alleging the same claims in a subsequent habeas petition. (*In re Clark* (1993) 5 Cal.4th 750, 797 (*Clark*).) The court will not consider a successive petition that realleges claims that previously have been rejected. (*Clark, supra*, 5 Cal.4th at p. 767.) Petitioner has already unsuccessfully asserted this as a ground for relief with this court in a habeas petition that he filed in 2006. Petitioner's attempt to relitigate the same claim constitutes an abuse of the writ. (*Clark, supra*, 5 Cal.4th at p. 797.) Assuming that the claim was not procedurally barred and could be entertained on the merits, relief would be nonetheless denied for failure to state a prima facie case for relief.
>
> "A plea agreement violation claim depends upon the actual terms of the agreement, not the subjective understanding of the defendant or deficient advice provided by his attorney." *(In re Honesto* (2005) 130 Cal. App. 4th 81, 92.) Petitioner agreed to a guilty plea to first degree murder, and admitted the personal use of a shotgun in the murder. In addition, he pled guilty to two counts of robbery. In exchange, Petitioner agreed to a sentence of 27 years to life in prison and the prosecution agreed to dismiss other charges and enhancements, as well as the special circumstance clause. A sentence of 25 years to life is an indeterminate sentence, with a maximum potential of life imprisonment. (See *In re Jeanice D.* (1980) 28 Cal.3d 210, 215-219; *People v. Yates* (1983) 34 Cal.3d 644, 648-652; *People v. Smith* (1984) 35 Cal.3d 798, 808-809.) Thus, an indeterminate sentence is, in legal effect, a sentence for the maximum term unless the parole authority acts to fix a shorter term. (See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1097-1098; *In re Honesto, supra,* at pp. 92-93.) The relevant statutes and regulations that govern parole do not entitle a prisoner to release on parole, regardless of the amount of time served, unless the petitioner is found suitable for parole. (*In re Honesto,*

---

[7] Within the document copy itself the text is at page 9, line 24 through page 10, line 4.

>  *supra,* at pp. 92-93.)   The record provided by Petitioner does not contain any promises by the prosecutor that Petitioner would serve a specific term of imprisonment.  Petitioner's counsel made it very clear on the record that the actually [sic] term of imprisonment was not up to the court, but up to the CDCR.  Further, Petitioner's counsel explained that Petitioner would be released in due course as determined by the CDCR, and it would depend on the sentence and Petitioner's conduct in prison.  Petitioner puts undue emphasis on a brief exchange between him and the sentencing court just following the explanation by his counsel discussed *ante*.  In response to the court's question of whether anyone had made any promises in connection with pleading guilty to the charges, Petitioner *asked* "That I would have a release date?"  The court then said, "[w]ell indeed, that is an automatic with the department of corrections.  They will set a date."  Nothing in this exchange promised Petitioner that he would be released by a certain date, or change Petitioner's counsel [sic] explanation that Petitioner's release would not be determined by the court or his plea agreement.  The plea agreement does not preclude the Board or the Governor from exercising their statutorily authorized discretion to deny Petitioner parole based on the statutory and regulatory criteria.  Petitioner is parole eligible, is receiving parole consideration hearings, and the Board's decision to deny Petitioner release on parole complies with due process as discussed *ante*.  Therefore, the plea agreement is being honored, and his punishment has not been increased.  Therefore, Petitioner has failed in his burden and has not state a prima facie case for relief.

Petition, Exh. A, state court denial of writ of habeas corpus, pp. 50-52[8]; Answer, Exh. 2, docket # 11-5, pp. 2-9, and Exh. 3.

Respondent echoes the state superior court ruling, noting, inter alia, that the lower state court rejected petitioner's plea bargain claim as successive, and also as lacking merit due to his indeterminate life sentence without a specific promise by either the prosecutor or the court that petitioner would be released within a certain period of time; respondent denies petitioner's plea agreement is being violated by his being subjected to an excessive prison term.  Answer, pp.

---

[8] When the California Supreme Court is silent as to why petitioner's habeas petition was denied, it is permissible to "look through" its decision to the last reasoned state court decision, which in this case was that of the Alameda County Superior Court.  Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S. Ct. 2590 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).  The state appellate and Supreme Court issued postcard habeas corpus denials without citation.  See Petition, Exh. A, pp. 54-55.

2, 4. The court would first address the procedural bar issue raised in the state court's analysis, however, respondent has expressly waived any argument with respect to any claim in the federal petition being procedurally barred by having stated, in the responsive pleading, after conceding that petitioner's claims are both timely and exhausted, the following: "[r]espondent admits that Johnson's[9] claims are not subject to any other[10] procedural bar."  Id., at 3.  Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005)(holding "that the defense of procedural default should be raised in the first responsive pleading in order to avoid waiver").  To implicate the burden shifting mechanism the Ninth Circuit formulated to assess procedural bar claims, the respondent must first have made the claim.  See Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2006).  In other words, as a threshold matter, respondent must plead the default.  Id., at 585 ("it is the obligation of the state 'to raise procedural default as a defense, or lose the right to assert the defense thereafter'"[internal citation omitted]).  Therefore, this court must proceed to the merits determination.

      A criminal defendant has a due process right to enforce the terms of agreement.  See Santobello v. New York, 404 U.S. 257, 261-62, 92 S. Ct. 495 (1971).  However, the violation of a plea agreement turns on contract law – the law on which plea bargains are based.  "Plea agreements are contractual in nature and are measured by contract law standards."  Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003) (quoting United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993)).

      The contract law applicable to this California state defendant's making a plea agreement in California state court is, of course, California law.  Under that law, it is clear that one convicted of murder with the possibility of parole has an expectation of being eligible for

---

[9] Petitioner herein.

[10] Notwithstanding that neither timeliness or exhaustion questions implicate a procedural bar, it is clear that respondent has waived the procedural bar of successiveness identified by the state superior court by expressly waiving it in this court.

parole *if that defendant would not pose an unreasonable risk to society when released.*  Cal. Penal Code § 3401; In re Lawrence, 44 Cal. 4th 1181, 1204-1205 (2008).  The possibility of parole requires a determination about one's danger to society by the BPH, and that decision is guided by a number of factors set forth in regulations.  Id.   Finding a defendant sentenced to a term that includes the possibility of parole not to be a danger if released is anything but routine; at times, it has almost approached zero possibility.

Thus, petitioner's sincere subjective expectation here, based on his brief exchange with the state superior court judge presiding over the plea-entry proceeding that a specific release date would be set by CDCR, was simply a misapprehension of the law.  And, under California law – absent two exceptions, a mistake of law will not trump what an objective determination of that law would be.  Hedging Concepts v. First Alliance Mort., 41 Cal. App. 4th 1410, 1421,  49 Cal. Rptr. 2d 191, 198-199 (2d Dist. 1996).  The two exceptions explained by Hedging are derived from Cal. Civil Code § 1578.  They are: (1) all parties share the same mistaken belief about the law; or (2) one side misunderstands the law, *and* the other party understands that a mistake is being made, but does not rectify that misunderstanding.  Id.   The undersigned has reviewed the transcript of the April 4, 1988, plea proceedings.  Petition, pp. 221- Answer, plea transcript, docket # 11-3, 69 - dkt. # 11-45, and Exh. 3.  As the state court noted, the record petitioner has produced does not show petitioner was made any promise by the prosecutor that he would be released from prison on a date certain.  The state court further correctly noted that petitioner's counsel made it very clear on the record the term of imprisonment was up to the CDCR, not the court.  This court notes the following exchange:

> The Court: Has anyone made you any promises in connection with your plea to these charges that have not been stated here in open court and in front of me this afternoon and on the record?
>
> The Witness: Certain circumstances would be dropped?
>
> The Court: They would move the court to drop the charges.
>
> The Witness: Yeah.

> The Court: Have any promises at all been made to you which I haven't heard about this afternoon on the record?
>
> The Witness: No, not really. How many years would I do of that?
>
> The Court: Your attorney can advise you.
>
> Mr. Cole:[11] That essentially is up to the Department of Corrections. And we discussed that currently what the rough estimate is. But the court is not in charge of that. So, that is something that is between you and the Department of Corrections once you enter that system.
>
> And I believe you know as much about that as anybody because that is something the court can't address because it's not up to the judge.
>
> And you will be released in due course of parole essentially, and that would be up to the Department of Corrections. And that would depend on your sentence and conduct in prison.
>
> The Witness: All right.

Petition, pp. 229-230.

This exchange immediately preceded the excerpt upon which petitioner focuses set forth above. That excerpt is repeated here with the additional statements made between the court and petitioner at the time:

> The Court: All right. Now my question is: has anyone made you any promises in connection with pleading guilty to these charges today that I haven't heard about right here in open court this afternoon on the record?
>
> The Witness : That I would have a release date?
>
> The Court: Well, you will, indeed. That is an automatic with the Department of Corrections. They will set that date.
>
> I want to know if anyone has made any promises to you to get you to plead guilty to these charges that I haven't been told about here in open court and on the record?
>
> The Witness: No.
>
> The Court: Has anyone threatened you in any manner to make you

---

[11] Petitioner's defense attorney.

9

|  |  |
|---|---|
| 1 | change your plea? |
| 2 | The Witness: No. |
| 3 | The Court: Are you entering into this plea freely and voluntarily? |
| 4 | The Witness: Yes. |

Petition, pp. 230-231.

There is also no evidence that the judge was mistaken as to the law, although there is some ambiguity when the judge asserts that the date would be "automatically" set by the Department of Corrections.[12] Moreover, no evidence has been presented, outside of the entire transcript, that the prosecutor would have had reason to believe that petitioner misunderstood the law.

But, in the final analysis, and perhaps in the initial, this is an AEDPA case and the undersigned's *de novo* conclusions may not count for much. The state court decision has to be an unreasonable application of Supreme Court authority, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts in light of the state record, § 2254(d)(2).[13] With respect

---

[12] In a sense the judge was correct in using the word. Once parole eligibility is approved, the setting of the actual parole date by means of matrices is "automatic."

[13] The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011), citing Williams v. Taylor, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The undersigned also finds that the same deference is paid to the factual determinations

to the state law which underlies the federal issues in this case, the federal habeas court is bound by the state law pronouncement absent an arbitrariness designed to avoid the federal issue. See Robinson v. Schiro, 595 F.3d 1086, 1104-1105 (9th Cir. 2010). As noted earlier, the Superior Court issued the last reasoned decision, and the undersigned has looked to that decision as the reasoning of the state supreme court. Ylst v. Nunnemaker, 501 U.S. at 803, 111 S. Ct. 2590. Under California law, petitioner's plea agreement was not breached and therefore no federal claim arises on the basis of violating a term of the agreement. This portion of petitioner's claim should be denied.

> 2) *Proposition 9 as applied to petitioner breaches his plea agreement by violating state and federal Ex Post Facto Clauses*

Petitioner alleges that he has a constitutional right to annual or two-year minimum parole hearing deferrals and that Prop. 9, Marsy's Law, which increases the minimum and maximum deferral periods, constitutes an Ex Post Facto violation as applied to him when he was given a five-year deferral. Petition, pp. 34-39; Traverse, pp. 7-8, 11, 14-15; see also, petitioner's Supplemental Briefing, pp. 1, 4 (docket # 16). Respondent argues that Marsy's Law "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold the court might establish under the Ex Post Facto Clause." Answer, p. 13, citing California Department of Corrections v. Morales, 514 U.S. 499, 507, [514], 115 S. Ct. 1597 (1995) and analogizing to that case. In Morales, id., the Supreme Court

---

of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

1  determined that a 1981 amendment to California parole procedures did not violate the Ex Post
2  Facto Clause in decreasing the frequency of parole hearings under certain circumstances when
3  applied to prisoners convicted of second degree murder before the amendment was enacted: the
4  punishment for second degree murder was an indeterminate sentence of 15 years to life before
5  and after the 1981 amendment and the substantive formula for any sentence reduction in this
6  range was unchanged; the only change was that after the initial parole hearing, the BP[H] could
7  defer the next hearing beyond a year or two if there was not a reasonable probability that the
8  inmate would be deemed in the interim suitable for parole.  Respondent notes accurately that the
9  state superior court relied on Morales.  Answer, pp. 13-14.  The state court also cited Garner v.
10 Jones, 529 U.S. 244, 250, 120 S, Ct. 1362 (2000), for the principle that a state's retroactive
11 changes to its parole laws in some instances may violate the Ex Post Facto Clause.  Answer, Exh.
12 3, state court order denying petition, Exh. 3, p. 39.

13         However, while acknowledging some similarity with the statutes in Morales and
14 Garner,  the Ninth Circuit has recently noted significant differences between those and Prop. 9,
15 i.e., Marsy's Law entails more extensive changes to the frequency of parole hearings; it increased
16  the minimum deferral period from one to three years; it altered the default deferral period from
17 one year to fifteen years; it changed the burden for imposing a deferral period other than the
18 default period.  Gilman v. Schwarzenegger, 638 F.3d 1101, 1107-08  (9th Cir. 2011).  "Neither
19 Morales nor Garner involved a change to the minimum deferral period, the default deferral
20 period, or the burden to impose a deferral period other than the default period."  Id., at 1108.
21 Quoting Garner, 529 U.S. at 251, 120 S. Ct. 1362 [], the Appellate Court observed, "the changes
22 required by Proposition 9 appear to 'create[] a significant risk of prolonging [Plaintiffs']
23 incarceration.'"  Id.  In any event, however, this portion of petitioner's claim should be dismissed
24 ////
25 ////
26 ////

in light of the class action, Gilman v. Brown,[14] CIV-S-05-0830 LKK GGH. The parameters of the Gilman class, as is made clear in the Order certifying the class, include petitioner. Order, filed on March 4, 2009, in Gilman v. Brown, CIV-S-05-0830 LKK GGH.[15]

The Gilman class is made up of:

> California state prisoners who: "(i) have been sentenced to a term that includes life; (ii) are serving sentences that include the possibility of parole; (iii) are eligible for parole; and (iv) have been denied parole on one or more occasions."

Id., p. 9.[16]

What is at issue in the suit are: "the procedures used in determining suitability for parole: the factors considered, the explanations given, and the frequency of the hearings." Id., p. 7 [emphasis in original]. The "frequency of the hearings" is precisely what is at issue in the portion of the second claim of the instant petition.

Moreover, recently, the district court judge assigned to this case found as follows with respect to an ex post facto challenge to "Marsy's Law" in a § 2254 action:

> A member of a class action seeking equitable relief cannot raise those same claims in a separate equitable action. Crawford v. Bell, 599 F.2d 890, 892-93 (9th Cir. 1979). See also McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991) ("Individual suits for injunctive relief from alleged unconstitutional prison conditions cannot be brought where there is an existing class action. To permit them would allow interference with the ongoing class action."); Gillespie v. Crawford, 858 F.2d 1101, 1103 (5th Cir. 1988) ("To allow individual suits would interfere with the orderly administration of the class action and risk inconsistent adjudication."). Indeed, "[a] district court has inherent power to

---

[14] This case has been variously denominated throughout the on-going litigation, i.e., Gilman v. Perez, Gilman v. Fisher and Gilman v. Schwarzenegger. Gilman v. Schwarzenegger, 638 F.3d 1101, was a decision reversing, on an interlocutory appeal by defendants, a district court decision imposing a preliminary injunction in the class action currently captioned Gilman v. Brown.

[15] See Docket # 182 of Case No. 05-CV-0830.

[16] As noted in the October 18, 2010, Order, at p. 3, the Ninth Circuit affirmed the Order, certifying the class. See Docket # 258 in Case No. 05-CV-0830.

1      choose among its broad arsenal of remedies when confronted with
2      situations where, as here, continued litigation of a matter would
    create undue hardship on the litigating parties, or would
3      improvidently circumscribe the actions of another court handling a
    prior certified action." Crawford, 599 F.2d at 892 (quoting Tate v.
4      Werner, 68 F.R.D. 513, 520 (E.D. Pa. 1975). Moreover,
    "increasing calender congestion in the federal courts makes it
5      imperative to avoid concurrent litigation in more than one forum
    whenever consistent with the rights of the parties.

6      A court may choose not to exercise its jurisdiction when another
    court having jurisdiction over the same matter has entertained it
7      and can achieve the same result. Id. at 893. Pursuant to the above
    authorities, Petitioner's Ex Post Facto claim is thus precluded.[1] [17]
8

9 Order in Cook v. Swarthout, CIV-S-10-2744 MCE GGH P, filed on May 4, 2011 (docket # 22).[18]

10 As to petitioner's contention that Marsy's Law violates his plea agreement, the state court's

11 finding that such a claim "fails as the plea agreement did not involve any promises regarding the

12 frequency of parole suitability hearings, or how suitability determination would be conducted,"

13 Exh. 3 to Ans., p.39, is not an unreasonable application of clearly established Supreme Court

14 authority.   This subpart of petitioner's claim should be dismissed.

                        3) *Due Process Violation when presiding commissioner allowed*
                                  *prosecutor in attendance to make cumulative statements*

17         Petitioner contends that at the 2009 parole hearing, the prosecutor in attendance

18 " was allowed to re-weigh the evidence of petitioner's commitment offense, re-try the case[,]

19 including asking questions that did not involve clarification," taking no account of the fact that

---

[17] [footnote] 1 If Petitioner wishes to pursue his ex post facto challenge individually, he may attempt to opt out of the Gilman class action. McReynolds v. Richards-Cantave, 588 F.3d 790, 800 (2d Cir. 2009) (recognizing that district courts have discretion to grant opt-out rights); Penson v. Terminal Transp. Co., Inc., 634 F.2d 989, 993 (5th Cir. 1981) ("[A]lthough a member of a class certified under [Federal Rule of Civil Procedure] 23(b) has no absolute right to opt out of the class, a district court may mandate such a right pursuant to its discretionary power under Rule 23.").

[18] Moreover, there are adverse-to-petitioner consequences in having the frequency of parole hearings issue submitted in habeas. AEDPA with its "unreasonableness" of interpretation of Supreme Court authority controls in habeas proceedings, while civil rights proceedings are determined de novo.

petitioner had been sentenced pursuant to a plea bargain. Petition, pp. 40-41; see also, petitioner's Supplemental Briefing, pp. 4-5. Petitioner quotes CAL. CODE REGS. tit.xv, § 2030(d)(1) & (2):

> (1) Procedures. The presiding hearing officer shall specify the hearing procedures and order in which testimony will be taken. The hearing officer shall ensure throughout the hearing that unnecessary, irrelevant or cumulative oral testimony and statements are excluded.
>
> (2) Role of the Prosecutor. The role of the prosecutor is to comment on the facts of the case and present an opinion about the appropriate disposition. In making comments, supporting documentation in the file should be cited. The prosecutor may be permitted to ask clarifying questions of the hearing panel, but may not render legal advice.

Petition, p. 40.

Petitioner's argument appears to be that the presiding hearing officer did not adequately curtail the prosecutor's comments, but petitioner does not specify precisely how the prosecutor's conduct was a violation of the state regulation cited or of federal constitutional law. Petitioner points to Morton v. Ruiz, 415 U.S. 199, 94 S. Ct. 1055 (1974), and Long Island Care at Home, LTD. v. Coke, 551 U.S. 158 (2007), for the proposition that an agency is to follow its own procedures even if the procedure is more rigorous than the constitution requires. Petition, p. 41. However, these cases are concerned with narrow questions implicating federal agencies and are not remotely related to petitioner's claim against a state entity such as the BPH. Petitioner contends that the BPH neglected its own regulation and further that the alleged arbitrariness of this activity implicates the Equal Protection Clause, citing Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364 (1991); Miller-El v. Dretke, 545 U.S. 231 (2005). Id. However, Powers is concerned a criminal defendant's right to object to race-based juror exclusions by way of peremptory challenges and Miller-El also has as its subject the discriminatory race-based striking of prospective jurors. Neither of these cases have anything to do with the prosecutor's questions or commentary at petitioner's 2009 parole hearing.

15

1		The court has reviewed the portions of the BPH hearing which petitioner identified as having subjected him to an unfair procedure.  Petitioner's Supp. Brf., p. 5, citing Petition, Exh. B, pp. 53-60.[19]  Nothing in the questioning or commentary appears to be violative of the regulation cited, nor can it be said in any way to rise to the level of a constitutional violation.

		Primarily, however, the court cannot even reach the issue raised because a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts.  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is unavailable for alleged error in the interpretation or application of state law.  Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).  This portion of the claim should be denied.

		Accordingly, IT IS RECOMMENDED that the petition be denied.

		If petitioner files objections, he shall also address if a certificate of appealability should issue and, if so, as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

		These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

---

[19] Pages 111-118 by the court's electronic pagination.

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within fourteen days after service of the objections.  The parties are
3  advised that failure to file objections within the specified time may waive the right to appeal the
4  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
5  DATED: September 14, 2011

                                               /s/ Gregory G. Hollows
                                   UNITED STATES MAGISTRATE JUDGE

GGH:009
john0722.f&r